## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES MANNING, JR.,

       Plaintiff,

v.                       Case No.: 06-2504-JWL-DJW

GENERAL MOTORS,

       Defendant.

### MEMORANDUM AND ORDER

       This is an employment discrimination case, which focuses on Defendant's decision in October 2005 that Plaintiff could not perform his job, or any other available position in the plant, based on significant medical restrictions received from his personal physician. Pending before the Court is Plaintiff's Motion to Compel (doc. 29) discovery responses. For the reasons stated below, Plaintiff's Motion will be granted.

### Relevant Facts

       Plaintiff began his employment with Defendant on March 28, 1971. Plaintiff contends that, as a result of repetitive manual work in the Defendant's car manufacturing facility, Plaintiff developed cervical myelopathy, which required surgery in the Spring of 2004. Plaintiff asserts he attempted to return to work in October of 2005 under restrictions from his personal physician, but Defendant's plant medical officer determined there was no line job that Plaintiff was able to perform with the restrictions. Accordingly, Defendant did not permit Plaintiff to return to work.

       In this lawsuit, Plaintiff alleges Defendant did not engage in a good faith interactive process to determine if the Plaintiff could perform his job or another vacant job in the plant with or without an accommodation. Plaintiff contends Defendant breached its obligation to assist him in returning to

work under the ADAPT program, which is part of the collective bargaining agreement between the employer and the union.  Plaintiff further contends that he was discriminated based upon his race (African-American) as Defendant had returned similarly situated Caucasian employees to light duty positions following medical procedures that prevented them from performing their regular jobs.

## Procedural Background

Plaintiff filed his *pro se* Complaint on November 20, 2006.  A scheduling conference was held by telephone on February 21, 2007.  Defendant's counsel and the *pro se* Plaintiff participated in the telephone scheduling conference. On March 5, 2007, the Court granted Plaintiff's Motion to Appoint Counsel, noting that a separate Order would be issued naming such counsel.  Acting *pro se*, Plaintiff served his first set of discovery requests upon Defendant on March 23, 2007.

On April 18, 2007, the Court appointed Michael Schultz to represent Plaintiff.  On April 19, 2007, Defendant served its discovery responses upon Plaintiff's new counsel.

On June 1, 2007, Plaintiff's counsel served additional written discovery upon Defendant. Although there were several objections lodged to the discovery based on timeliness and method of service, the parties conferred and resolved each of these issues.  Defendant timely served its responses to Plaintiff's second set of written discovery requests.

On August 15, 2007, Plaintiff's counsel faxed a golden rule letter to Defendant's counsel.  In this letter, Plaintiff requested Defendant supplement its responses to written discovery no later than August 17, 2007.  Defendant's counsel states she responded on August 15 with her own letter, within which she stated she would be unable to work on discovery disputes until the week of August 20-24.[1]

---

[1]Plaintiff's counsel avers he did not receive a copy of this letter until just prior to filing this Motion to Compel.

2

On August 20, Plaintiff's counsel e-mailed and telephoned Defendant's counsel regarding her position with respect to the discovery disputes. Plaintiff's counsel requested a return phone call. Defendant's counsel subsequently e-mailed Plaintiff's counsel, stating that she again was too busy to address the issues and would not have time to do so until August 22, 2007.   Because August 22, 2007 was one day past the thirty-day scheduling order deadline for Plaintiff to file a motion to compel with respect to this discovery, Plaintiff filed this Motion to Compel on August 21, 2007.

## Failure to Confer

Defendant argues Plaintiff did not satisfy his duty to confer because he did not make a good faith effort to resolve the discovery disputes before filing the present Motion to Compel.

Federal Rule of Civil Procedure 37 requires the movant to make a good faith attempt to confer and resolve discovery disputes prior to filing a motion to compel discovery responses.[2]  Rule 37 also requires a certification be attached to the motion to compel explaining the efforts taken to resolve the dispute.[3]  District of Kansas Rule 37.2 requires counsel for the moving party to confer or make a reasonable effort to confer with opposing counsel concerning the matter in dispute prior to filing a motion to compel.[4]  A "reasonable effort to confer ... requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[5]

---

[2]Fed. R. Civ. P. 37.

[3]*Id.*

[4]D. Kan. Rule 37.2 (2007).

[5]*Id.*

The purpose of these rules is to encourage the parties to satisfactorily resolve their discovery disputes prior to resorting to judicial intervention.[6] Meet and confer requirements are not satisfied "by requesting or demanding compliance with the requests for discovery."[7] The parties must "determin[e] precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention."[8]

Upon consideration of the circumstances in the preceding section, the Court finds Plaintiff has satisfactorily made a reasonable effort to confer as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37. Plaintiff made numerous efforts over a five-day period to confer with opposing counsel regarding the discovery disputes but, citing the press of other business and medical issues, Defendant repeatedly declined to participate in the process. Although the Court understands the hectic schedules to which attorneys often must adhere, the Court notes that four separate attorneys within Defendant's law firm have entered an appearance in this matter on behalf of General Motors. The Court finds it difficult to believe that none of these four attorneys could have made time during the relevant five-day period to meet and confer with Plaintiff's counsel regarding the discovery disputes before the August 21, 2007 scheduling order deadline for filing Plaintiff's motion to compel. Accordingly, Defendant's objection to this Motion to Compel based on failure to confer is overruled.

---

[6]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan.1999).

[7]*Id.*

[8]*Id.*

## Discussion

Notably, the parties eventually were able to meet and confer regarding the issues set forth in Plaintiff's Motion to Compel and were able to resolve the vast majority of these discovery disputes. Accordingly, it is only Interrogatory No. 4 and Requests 11 and 13 that remain in dispute:

### A.    Interrogatory No. 4 and Request No. 11

Interrogatory No. 4 requests Defendant list every job vacancy at the GM Kansas City facility from March 1, 2004 through July 31, 2004, providing the job title and a description for the job. Request No. 11 requests all documents that identify any vacant positions at the GM Kansas City facility in March through July 2004. Defendant objects to this interrogatory and document request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Defendant further responds that it has no documents responsive to these two discovery requests.

### 1.    Relevancy, Overbreadth, Undue Burden

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[9]  Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant

---

[9]Fed. R. Civ. P. 26(b)(1).

to the claim or defense of any party.[10] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[11]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[12] Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[13]

The Court finds the relevancy of Interrogatory No. 4 and Request No. 11 are apparent on their face. Plaintiff's claims rest on the legal premise that an employer has an obligation to transfer a disabled employee to another vacant position where he can perform the essential functions of the position with or without an accommodation if the employee can no longer perform the essential functions of his current position with an accommodation. In his Complaint, Plaintiff alleges Defendant failed to accommodate his disability by placing him in a vacant position. Plaintiff further alleges Defendant failed to accommodate his disability based on his race, Black. Thus, a request for

---

[10]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[11]*Id.*

[12]*Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan.2003) (citation omitted).

[13]*Owens*, 221 F.R.D. at 652 (citation omitted).

information and documents relating to the vacant positions available during the time period at issue is reasonably calculated to lead to the discovery of admissible evidence on Plaintiff's claims.

Because the discovery sought appears relevant on its face, it is Defendant, as the party resisting the discovery, who has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  In its responsive brief, Defendant fails to provide any argument or evidence supporting its position that Interrogatory No. 4 and Request No. 11 are overly broad, unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence. The only argument asserted by Defendant in its brief is that it has no responsive documents.

### 2.      Defendant's Claim it Has No Responsive Documents in Its Possession

With regard to Request No. 11, Plaintiff challenges Defendant's assertion that it has no responsive documents.  In support of this challenge, Plaintiff contends that at the very least, there must be electronic documents concerning vacant positions in the GM plant. Plaintiff also contends that he and others are prepared to testify that GM had a duty to post vacant positions and that, as a result, there must be a paper trail of such vacant jobs. Finally, Plaintiff contends that turnover in the plant must have been documented in some manner and that if there is any record of a new hire since the Spring of 2004, then there is a record of a vacant position.

Fed. R. Civ. P. 34 imposes a duty on the responding party to produce documents that are in the "possession, custody or control of the party."[14] To that end, the Court cannot compel a party to produce

---

[14]Fed. R. Civ. P. 34.

documents that do not exist or that are not in that party's possession, custody, or control.[15] Although the Court finds it difficult to imagine that Defendant does not possess any electronic or paper documents identifying vacant positions at the GM Kansas City facility from March through July 2004, there has been no information submitted by Plaintiff to lead the Court to question the veracity of Plaintiff's statement that no responsive documents exist. The Court thus has no basis upon which to compel Defendant to produce responsive documents. The Court, will, however, require Defendant to serve supplemental written responses to this request unconditionally representing that no responsive documents are in its possession, custody, or control.

With regard to Interrogatory No. 4, Plaintiff maintains Defendant's assertion that it has no responsive documents is without merit. This is because the request for information in Interrogatory No. 4 is in the form of an interrogatory and not a request for documents. Thus, Plaintiff contends the answer to Interrogatory No. 4 can be based not only on written documents, but information verbally obtained from managers, administrative staff and other employees as to vacant positions that arose in the plant during the requested time period. The Court is persuaded by Plaintiff's argument and will require Defendant to fully answer Interrogatory No. 4.

**B.    Request No. 13**

Request No. 13 seeks all documents that demonstrate GM has accommodated specific employees with disabilities at the Kansas City plant from January 1, 2003 through the present date. Defendant objects to this request on grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence for numerous reasons.

---

[15]*Sonnino v. University of Kansas Hosp. Authority*, 220 F.R.D. 633, 640 (D. Kan. 2004) (citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001)).

1.      **Temporal Scope**

Defendant asserts Request No. 13 is overly broad in temporal scope because it covers a five-year time period.  "With regard to temporal scope, discovery of information both before and after the liability period within [an employment discrimination] lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period."[16]  Here, the Court finds information from the three years prior and two years after the October 2005 liability period is relevant to Plaintiff's claims in that such information  may also lead to the discovery of admissible evidence regarding similarly situated employees. Plaintiff is entitled to discover the identities of any other employees who may be similarly situated to Plaintiffs. Accordingly, the Court overrules Defendant's objection based on temporal scope.

2.      **Organizational Scope**

Defendant asserts the request is overly broad in organizational scope as the request seeks discovery for all employees in the plant, regardless of whether they are salaried or hourly, and without regard to their position, department, supervisor or medical history.

---

[16]*Owens*, 221 F.R.D. at 655 (setting temporal scope at two and a half years prior to discriminatory conduct); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002) (three years prior to alleged conduct and two years after conduct relevant); *E.E.O.C. v. Kansas City Southern Ry.*, 195 F.R.D. 678, 679 (D. Kan. 2000) (three years prior to the time the discriminatory conduct was alleged to have occurred and one year after is relevant); *Long v. Landvest Corp.*, No. 04-2025-CM, 2006 WL 897612, *7-8 (D. Kan. Mar. 31, 2006) (ten-year and five-year temporal scope for discovery requests was overbroad; three years was a reasonable scope, in light of the three-year statute of limitations); *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM, 2005 WL 375667, *2 (D. Kan. Feb. 3, 2005) (noting three-year temporal scope has been upheld in discrimination cases as reasonable and not overly broad); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, *2 (D. Kan. Jan. 31, 2002) (three year temporal scope not overly broad).

To assert a claim of disparate treatment based on race, a plaintiff must show that he was treated differently than similarly situated employees who are not in plaintiff's protected class.[17]  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[18]  In determining whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[19]

The gravamen of Plaintiff's disparate treatment claim here is that Defendant failed to accommodate his disability and that Defendant's conduct in this regard was  based on Plaintiff's race, Black.  Specifically, Plaintiff asserts Defendant accommodated the disabilities of similarly situated non-Black employees by placing them in vacant positions.  Based on the facts associated with Plaintiff's claim of disparate treatment, the Court finds that discovery concerning all employees in the plant, regardless of whether they are salaried or hourly, and without regard to their position, department, supervisor or medical history, is relevant on its face.  This is because the individual who made the decision regarding whether Plaintiff could be accommodated was the plant medical officer. Because all employees working in the plant, including Plaintiff, are subject to medical accommodation decisions made by the plant medical officer, information and documents relating to all employees working in the plant is relevant to Plaintiff's claim that he was treated differently than similarly situated employees.

---

[17]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citing *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir.1997)).

[18]*Id.*

[19]*Id.*

Because the discovery sought appears relevant on its face, it is Defendant, as the party resisting the discovery, who has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  In its responsive brief, Defendant summarily argues that only the following plant employees would be similarly situated to Plaintiff: (a) hourly employees (b) who worked in Plaintiff's department in 2005, (c) who were supervised by Plaintiff's supervisor, (d) who had comparable medical restrictions, and (d) whom GM allowed to return to work around October 2005. Notably, Defendant provides no argument or evidence supporting this position.  Accordingly, the Court overrules Defendant's objection based on organizational scope.

### 3.     Plaintiff's Deposition Testimony

Defendant asserts that Plaintiff testified in his deposition that his complaints about Defendant's "accommodation" of other employees was limited to discrete incidents involving two employees in his department: (a) Ron Piatt, a supervisor, who returned to work following a hernia operation in 2002, and (b) Al Cella, another hourly worker, who returned to work in 2004 after having surgery for colon cancer. Defendant argues it should not be required to produce responsive documents for Ron Piatt or Al Cella because neither of these two employees are similarly situated to Plaintiff in terms of  salary, position, department, supervisor or medical history.  Because this argument is identical to the argument presented by Defendant in the preceding section (overly broad organizational scope), Defendant's objection again will be overruled.

11

### 4.     Undue Burden

Defendant has the burden to support this objection and to show not only "undue burden or expense," but also to show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.[20]  Thus, even if the production of documents would cause great labor and expense or even considerable hardship and the possibility of injury to its business, Defendant would still be required to establish that the hardship would be undue and disproportionate to the benefits Plaintiff would gain from the document production.  Moreover, Defendant, as the party objecting to the discovery as unduly burdensome "cannot rely on some generalized objections, but must show specifically how each request is burdensome . . . by submitting affidavits or some detailed explanation as to the nature of the claimed burden."[21]

Here, Defendant asserts that responding to this request would be "extremely time-consuming." In support of this assertion, Defendant states that in order to ascertain what documents are responsive to Request No. 13, Defendant would have to search files for hundreds of employees (some of whom have had multiple restrictions) and then obtain outside counsel's assistance to determine (1) whether each employees' medical restrictions created a "disability" under the ADA and (2) whether any actions Defendant took in response to those employees' restrictions could be deemed an "accommodation."

The Court finds Defendant has failed to adequately support its undue burden objection.  As a preliminary matter, Defendant fails to provide the Court with any evidence showing the expenditure of time, effort or money that would be necessary to produce the requested documents.  Without this evidence, the Court is not persuaded that reviewing even hundreds of files for relevant documents and

---

[20]*Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991).

[21]*Kutilek v. Gannon*, 132 F.R.D. 296, 300 (D. Kan. 1990).

subsequent legal review by counsel of those relevant documents would cause great labor, great expense, considerable hardship or the possibility of injury to Defendant's business. Even if Defendant had submitted evidence to demonstrate such a hardship, Defendant further failed to establish that the hardship would be undue and disproportionate to the benefits Plaintiff would gain from the document production. Thus, Defendant's objection based on undue burden will be overruled.

>        5.        **Confidentiality**

Defendant also objects to production of the documents requested on grounds that the documents are confidential. This objection will be overruled because, as this Court previously has held, "a concern for protecting confidentiality does not equate to privilege."[22] With that said, a party may request the court enter a protective order pursuant to Fed. R. Civ. P. 26(c) as a means to protect such confidential information. Under the circumstances presented here, the Court finds that entry of such a protective order will appropriately safeguard any potential for harm associated with disclosure of the requested documents and that such a protective order was entered in this case on June 18, 2007 (doc. 25). Accordingly, Defendant's objection based on confidentiality will be overruled.

## C.    <u>Sanctions</u>

The Court will now consider the issues of sanctions. Although Plaintiff does not request sanctions in his motion, the Court finds that an award might be appropriate here, as the Court is granting the Motion to Compel.

Federal Rule of Civil Procedure 37(a)(4) governs the imposition of sanctions in connection with motions to compel. Subsection (a)(4)(A) provides that when a motion to compel is granted, "the

---

[22]*DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 682 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004)).

court *shall,* after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that . . . the opposing party's . . . response or objection was substantially justified, or that other circumstances make an award of expenses unjust."[23]

The Court has granted the Motion to Compel in its entirety.  Moreover, Defendant produced documents and information requested after the Motion to Compel was filed.  Thus, the Court finds that an award of sanctions pursuant to Rule 34(a)(4)(A) may be appropriate here.  Before the Court may make any such award, however, the non-moving party must be afforded the "opportunity to be heard."[24]  An actual hearing is not necessary, however, and the Court may consider the issue of sanctions "on written submissions."[25]  The "written submission" requirement is met where the moving party requests sanctions in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.[26]

Again, Plaintiff did not request sanctions in his motion.  Thus, Defendant has not been given sufficient "opportunity to be heard," and the Court will decline to impose sanctions at this time.  To satisfy the "written submissions" rule, the Court will direct Defendant and/or its counsel to show

---

[23]Fed. R. Civ. P. 37(a)(4)(A) (emphasis added).

[24]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) (citing Fed. R. Civ. P. 37(a)(4)); *Fears v. Wal-Mart Stores, Inc.*, No. 99-2515-JWL, 2000 WL 1679418, at *6 (D. Kan. Oct. 13, 2000).

[25]*Fears*, 2000 WL 1679418 at *6 (citing Advisory Committee Note to the 1993 Amendments to Rule 37(a)(4)).

[26]*Id.*

cause, in writing, within **thirty (30) days** of the date of filing of this Memorandum and Order, why the Court should not require either or both of them[27] to pay the reasonable expenses and attorney fees incurred by Plaintiff in making the Motion to Compel.  Plaintiff shall have **eleven (11) days** thereafter to file a response thereto, if he so chooses.  In the event the Court determines that sanctions should be imposed, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Plaintiff has incurred, and for the filing of any related briefs.

### Summary of Ruling

Plaintiff's Motion to Compel (doc. 29) is granted and it is hereby ordered that

(1)       Defendant's objection to this Motion to Compel based on failure to confer is overruled;

(2)       On or before **December 14, 2007**, Defendant shall serve supplemental written responses to Request No. 11 unconditionally representing that no responsive documents, electronic or paper, are in its possession, custody, or control;

(3)       On or before **December 14, 2007**, Defendant shall fully answer Interrogatory No. 4;

(4)       On or before **December 14, 2007**, Defendant shall fully respond to Request No. 13;

(5)       On or before **December 21, 2007**, Defendant and/or its counsel shall show cause, in writing, why the Court should not require either or both of them to pay the reasonable expenses and attorney fees incurred by Plaintiff in making the Motion to Compel.  Plaintiff shall have **eleven (11) days** thereafter to file a response thereto, if he so chooses.

---

[27]To the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct.  *McCoo*, 192 F.R.D. at 697.  The sanctioning of a party, as opposed to the party's counsel, "requires specific findings that the party was aware of the wrongdoing." *Id.*  At present, the Court has no evidence that Defendant itself was responsible for the objections and responses at issue.  However, if Defendant or its attorneys wish to provide the Court with any information in this regard, Defendant and/or its counsel may do so in the pleading(s) provided to the Court pursuant to the briefing schedule set forth herein.  The Court will defer ruling on this issue until it has received the parties' briefs.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 4th day of December, 2007.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties