## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**James Manning, Jr.,**

               **Plaintiff,**

**v.**                                    **Case No. 06-2504-JWL**

**General Motors,**

               **Defendant.**

### MEMORANDUM & ORDER

Plaintiff filed suit against defendant asserting claims of disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff also asserts a claim under section 301 of the Labor Management Relations Act of 1947 based on defendant's alleged breach of certain terms of the collective bargaining agreement. This matter is presently before the court on defendant's motion for summary judgment (doc. 36) on all claims. As will be explained, the motion is granted in its entirety.[1]

### I.     Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff, an African-American male, began his employment with defendant in 1971 as an hourly worker. At all times pertinent to this lawsuit, plaintiff was a

---

[1]Also pending before the court is defendant's unopposed motion to continue the trial setting in this case. In light of the court's ruling on the motion for summary judgment, the motion to continue the trial setting is moot.

member of the United Auto Workers union and his position was governed by the GM-UAW collective bargaining agreement.  On February 22, 2004, plaintiff began a paid medical leave of absence for treatment of cervical myelopathy and that was the last day that plaintiff physically worked in the plant.  At the time he went on leave, plaintiff was working as a Team Leader in the quality control department, a position that he had held for approximately five years.

In early October 2005, plaintiff attempted to return to work and presented medical restrictions of "indefinite" duration from his personal physician, Dr. John Henderson.  Those restrictions, detailed on a form provided by defendant, included the following:  sit full-time while working; limit walking to less than one hour per day; no line work; limit reaching with left arm to less than 5 minutes; limit reaching with right arm to less than 5 minutes; limit gripping or grasping with left hand to less than 5 minutes; no squatting or kneeling; no job that requires stair climbing; no climbing ladders; limited neck movement; ground level work only; no use of palm buttons, foot pedals, torque guns, sanders, vibrating tools, spray/sealant guns, hammers, mallets or sledges; no lifting greater than 5 pounds; and no operating cranes or power vehicles.

Upon receipt and review of plaintiff's restrictions, Dr. Donald Knepper, defendant's medical director, determined that certain of plaintiff's restrictions–sitting full-time while working; walking less than one hour per day; and no line work–were so restrictive as to preclude plaintiff from returning to work because all line assembly jobs in plaintiff's job classification (defendant's "6000 classification") required him to be able to perform these tasks.  While the record is unclear, defendant somehow communicated to plaintiff that there was no job available to him at the plant.  Although defendant has a program (the "ADAPT" program) incorporated

2

in the pertinent collective bargaining agreement that places employees with restrictions into transitional positions consistent with those restrictions until the employee is able to return to full-time work, defendant asserts that plaintiff was not eligible for the ADAPT program because that program is available only to employees with restrictions not exceeding sixty days.

Plaintiff made various attempts to contact Dr. Knepper concerning his desire to return to work and Dr. Knepper did not return plaintiff's phone calls and had no further contact with plaintiff. The record does not indicate that plaintiff had any other contact with defendant concerning his desire to return and whether any accommodations could be provided for him to enable him to return to work. While Dr. Knepper and Dr. Henderson exchanged written communications in January 2006, plaintiff's restrictions were not altered at any time and Dr. Knepper continued to assert that plaintiff's restrictions precluded him from performing all jobs in plaintiff's job classification. In April 2007, plaintiff applied for and received total and permanent disability benefits from defendant.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit*

*Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also*

4

*Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III.    Disability Discrimination

In the pretrial order, plaintiff sets forth two claims under the ADA.  His first claim is that defendant discriminated against him on the basis of his disability when it refused to return him to his Team Leader position.  His second claim is that defendant failed to accommodate his disability by refusing to transfer or reassign him to a vacant position pursuant to the Tenth Circuit's decision in *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999).  Defendant moves for summary judgment on both claims.

To sustain his first claim under the ADA, plaintiff must show, inter alia, that he has a disability within the meaning of the ADA and that he was qualified, that is, he "could perform the essential functions of the job in question, with or without accommodation."  *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001) (citations omitted).  For purposes of defendant's motion, the court assumes without deciding that plaintiff has a disability within the meaning of the ADA and turns to the issue of whether plaintiff could perform the essential functions of his Team Leader position with or without accommodation.  The Circuit has

5

instructed that resolution of that issue involves two steps: "First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue.  Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions."  *Id*. (citing *Martin v. Kansas*, 190 F.3d 1120, 1129-30 (10th Cir. 1999), *overruled on other grounds*, *Board of Tr. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (additional citations omitted)).

The essential functions of a job are "the fundamental job duties of the employment position the individual with a disability holds or desires."  *Id*. (quoting 29 C.F.R. § 1630.2(n)(1) (2001)).  One way to establish that a function is essential is to show that the position exists to perform that function.  *Id*. (quoting 29 C.F.R. § 1630.2(n)(2)(i) (2001)).  Evidence bearing on the essential function question includes:  the employer's judgment as to which functions are essential; written job descriptions in use by the employer; the amount of time spent on the job performing the function; and the consequences of not requiring the incumbent to perform the function.  *Id*. (quoting *Frazier v. Simmons*, 254 F.3d 1247, 1258 (10th Cir. 2001) (quoting from more extensive list at 29 C.F.R. § 1630.2(n)(3)).

Defendant has submitted a written job description that it contends applies to plaintiff's Team Leader position.  Plaintiff contends that the description does not, in fact, apply to his job. The dispute is irrelevant as plaintiff's own testimony leaves no doubt that his medical restrictions precluded him from performing the essential functions of his position.  Plaintiff testified that his position essentially required two different types of work.  According to plaintiff, about one-half

6

of his Team Leader responsibilities included computer work and attending various meetings and he testified to his belief that he could perform this part of his Team Leader position within his medical restrictions.  However, plaintiff further testified that the other half of his responsibilities focused on working "in the field" to make sure that the employees on his crew were performing their jobs correctly and that things were running smoothly.  Plaintiff admitted that this aspect of his Team Leader position required him to walk the entire body shop, to stand and to climb stairs and he further admitted that his medical restrictions prohibited these activities.[2]

Having determined that plaintiff was unable to perform certain essential functions of his Team Leader position, the court next determines whether he could have performed those functions with accommodation.  *See Mathews*, 263 F.3d at 1168.  Plaintiff argues that defendant should have simply permitted him to perform those functions of the Team Leader position that he was able to perform with his restrictions–the "50 percent" of his position that included computer work and attending meetings.  In the same vein, plaintiff contends that defendant should have allowed him to do light-duty work "at least temporarily," despite the indefinite duration of his restrictions.  In *Mathews*, however, the Tenth Circuit expressly rejected an employee's proposal that he be permitted to perform only a portion of the essential functions of

---

[2]Plaintiff states in his summary judgment response that defendant has "utterly failed in its burden as the moving party to demonstrate that Manning was unable to perform the essential functions of his job as Team Leader in the quality control department."  Contrary to plaintiff's assertion, it is plaintiff's burden on summary judgment to show that he is able to perform the essential functions of his job.  *See Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) ("The plaintiff bears the burden of showing she is able to perform the essential functions of her job.") (summary judgment context).

his position.  *See id.* at 1169 (stating that such a proposal was "tantamount to asking [the Post] to provide a permanent light duty post.").  As reiterated in *Mathews*, an employer is not required to accommodate an employee by modifying or eliminating an essential function of the job or by creating an entirely new position.  *Id.* at 1168-69.  Plaintiff, then, has not shown that his request to simply do one-half of his job is a reasonable one.

Similarly, plaintiff has not shown that his request for a temporary light-duty position in the face of potentially permanent restrictions is reasonable or required by law. While plaintiff highlights that defendant permitted two other employees, Mssrs. Piatt and Cella, to return from medical leave to light-duty posts on a temporary basis, there is no evidence that those employees presented medical restrictions, like plaintiff, of indefinite and potentially permanent duration. In fact, the evidence permits a reasonable inference that those employees presented less extensive restrictions of a temporary duration.  In that regard, plaintiff testified that Mr. Piatt was allowed to "kind of just lay[] back and tak[e] it easy" after returning to work from a hernia operation and that Mr. Cella "didn't have to do hardly anything" after he returned to work from surgery for colon cancer.  There is simply no evidence, then, that these individuals presented extensive restrictions (such as no standing or walking while working) of indefinite duration. Defendant's treatment of Mssrs. Piatt and Cella, then, does not suggest that it should have permitted plaintiff to return to light duty work on a temporary basis.  *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 697 (7th Cir. 1998) ("[W]e believe it would frustrate the ADA for permanently impaired employees to fill temporary light-duty assignments when those jobs have been set aside specifically for recuperating employees.").

8

The court turns, then, to plaintiff's second ADA claim, that defendant should have accommodated his restrictions by transferring or reassigning him to a vacant position pursuant to the Tenth Circuit's decision in *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999). As the Circuit indicated in *Midland Brake*, a plaintiff seeking to survive summary judgment on an ADA claim of failure to accommodate by offering reassignment to a vacant position bears the burden of production with respect to a prima facie case. *Id*. at 1179.  To make such a prima facie case, the plaintiff must make an initial showing that:

> (1)     The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;
>
> (2)     The preferred option of accommodation within the employee's existing job cannot reasonably be accomplished;
>
> (3)     The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;
>
> (4)     The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and
>
> (5)     The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

*Id*.  As it did above, the court assumes that plaintiff has a disability within the meaning of the ADA and the record reflects that plaintiff made his limitations known to defendant such that the first element of the prima facie case is satisfied.  The second element is also satisfied as there is

no evidence, as explained above, that accommodation within plaintiff's Team Leader position could reasonably be accomplished.  While the record does not reflect that plaintiff requested reassignment to a vacant position for purposes of the third element, genuine issues of material fact exist with respect to this element because plaintiff has come forward with evidence that defendant did not engage in the interactive process contemplated by the ADA such that he was denied the opportunity to make such a request.

Nonetheless, plaintiff cannot survive summary judgment because the summary judgment record is devoid of any evidence that specific jobs were available within the company at the time a request for reassignment or transfer would have been made had he been given the opportunity to make that request.  *Id*. at 1174 ("Even if Midland Brake failed to fulfill its interactive obligations to help secure a reassignment position, Smith will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position.") (citations omitted).  Plaintiff discusses in his deposition and in his summary judgment papers his alleged willingness and ability to perform various other jobs, including certain non-assembly line jobs within the 6000 classification and certain jobs outside the 6000 classification, including a clerical position and an engineering position.  He further asserts that such positions should have been made available to him either pursuant to the ADAPT provisions of the collective bargaining agreement or under the Tenth Circuit's opinion in *Smith v. Midland Brake* regardless of his eligibility for the ADAPT program.  But in the absence of evidence that such positions were actually available at or about the time plaintiff's request would have been made had he been provided the opportunity to make a request, defendant is entitled

to summary judgment on this claim.  *See Mason v. Avaya Comms., Inc*., 357 F.3d 1114, 1119 (10th Cir. 2004) (finding no need to consider whether transfer would have been reasonable accommodation where plaintiff did not present any evidence that employer "currently has a vacant position" to which plaintiff could transfer); *see also  Frazier v. Simmons*, 254 F.3d 1247, 1261-63 (10th Cir. 2001) (summary judgment appropriately granted absent evidence of an appropriate vacant position); *see also Donahue v. Consolidated Rail Corp*., 224 F.3d 226, 234 (3d Cir. 2000) (holding "in a failure-to-transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant-even if it also appears that the defendant failed to engage in good faith in the interactive process").

Plaintiff asserts in his papers that defendant has refused to respond to interrogatories and requests for production of documents concerning vacant positions during the relevant time frame and that defendant's refusal has placed him at an "extreme disadvantage" for purposes of summary judgment.  While plaintiff has not filed a Rule 56(f) affidavit or referenced that rule in any respect, he does direct the court to a motion to compel filed by plaintiff and pending at the time plaintiff filed his response to the summary judgment motion.  The magistrate judge, however, granted plaintiff's motion to compel in its entirety prior to the filing of defendant's reply brief and it appears from the docket (and, more specifically, the entry reflecting defendant's certificate of service) that defendant amended its discovery responses on December 14, 2007.  Nonetheless, plaintiff has not moved to supplement the summary judgment record.

Moreover, aside from defendant's discovery obligations, plaintiff could have pursued (but apparently did not) deposition discovery from defendant's witnesses concerning what positions were available at the time plaintiff desired reassignment.  The record reflects, then, that plaintiff has been provided a full opportunity for discovery concerning the availability of positions during the relevant time frame and yet the summary judgment record is still insufficient to establish the availability of a position to which plaintiff could have been reassigned.  Summary judgment is appropriate on this claim.

In sum, plaintiff has not shown that he could perform the essential functions of his Team Leader position with or without accommodation and he has not shown the availability of another position to which he could have been reassigned.  Thus, no genuine issues of material fact remain for trial and summary judgment is appropriate on plaintiff's ADA claims.


**IV.    Race Discrimination**

Plaintiff also contends that defendant refused to return him to work and/or refused to permit plaintiff to work a light-duty job based on his race.  As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Antonio v. Sygma Network, Inc*., 458 F.3d 1177, 1181 (10th Cir. 2006).  Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 n.8 (10th Cir. 2007); *Antonio*, 458 F.3d at 1181.  If he establishes a prima facie case, the burden shifts to defendant to articulate a

legitimate, non-discriminatory reason for each of the adverse employment actions. *See Antonio*, 458 F.3d at 1181. If defendant meets this burden, summary judgment against plaintiff is warranted unless he shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual. *See Antonio*, 458 F.3d at 1181; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005). To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Antonio*, 458 F.3d at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

In its motion for summary judgment, defendant does not dispute that plaintiff has established a prima facie case with respect to this claim and moves for summary judgment on the grounds that plaintiff cannot establish that defendant's proffered reason for refusing to return plaintiff to work is pretextual.[3] In that regard, defendant's evidence demonstrates that it did not return plaintiff to work because he was unable to perform the essential functions of any 6000 classification job with or without accommodation. Defendant further asserts that it did not offer

---

[3]Defendant does challenge whether plaintiff can establish a prima facie case with respect to any claim based on defendant's refusal to agree to mediate plaintiff's EEOC charge and any claim based on certain communications between Dr. Knepper and Dr. Henderson. It is clear from plaintiff's response, however, that he is not asserting separate claims based on these facts.

plaintiff a light-duty job because he did not present temporary or short-term restrictions. Defendant has satisfied its "exceedingly light" burden of production, *see Goodwin v. General Motors Corp*., 275 F.3d 1005, 1013 (10th Cir. 2002), and the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretextual. *See Antonio*, 458 F.3d at 1181.

In support of his claim, plaintiff contends that two Caucasian employees, Mssrs. Piatt and Cella, were both permitted to perform light duty jobs after they returned from medical leaves of absence. This is clearly an acceptable method of showing pretext. *See Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1291 (10th Cir. 2007). The problem with plaintiff's argument in this case, however, is that he has come forward with no specific evidence concerning the nature and extent of any medical restrictions placed on Mr. Piatt or Mr. Cella at the time they returned to work. Stated another way, plaintiff has come forward with no evidence demonstrating that Mr. Piatt or Mr. Cella, like plaintiff, was subject to extensive medical restrictions of indefinite and potentially permanent duration. In fact, the knowledge plaintiff does have concerning Mr. Piatt and Mr. Cella suggests that any medical restrictions placed upon them would have been significantly less extensive and temporary in nature. In that regard, plaintiff testified that Mr. Piatt was allowed to "kind of just lay[] back and tak[e] it easy" after returning to work from a hernia operation and that Mr. Cella "didn't have to do hardly anything" after he returned to work from surgery for colon cancer. For these reasons, defendant's treatment of Mssrs. Piatt and Cella does not raise an inference of discrimination. *See Tyson v. Gannett, Inc*., 2007 WL 1894276, at *2 (S.D. Ind. July 2, 2007) (granting summary judgment on plaintiff's Title VII claim based on employer's refusal to return her to work after sustaining

14

an injury; employees who were treated more favorably than plaintiff were not similarly situated to plaintiff because they did not have permanent restrictions); *Silva v. Chertoff*, 512 F. Supp. 2d 792, 808-09 (W.D. Tex. 2007) (granting summary judgment on plaintiff's Title VII claim based on employer's denial of plaintiff's request to transfer to permanent light duty assignment; employees who were arguably treated more favorably were not similarly situated because plaintiff had no evidence that employees were, like plaintiff, subject to permanent medical restrictions); *Rider v. General Motors Corp.*, 2006 WL 1520084, at *9 (W.D.N.Y. May 26, 2006) (rejecting plaintiff's argument that defendant treated other employees more favorably with respect to accommodations in the workplace where other employees had temporary restrictions in contrast to plaintiff's permanent restriction); *Staszak v. Kimberly-Clark Corp.*, 2002 WL 1858788, at *4 (N.D. Ill. Aug. 12, 2002) (employees identified by plaintiff were not similarly situated because they were not subject to medical restrictions of indefinite duration).

Plaintiff makes no other arguments in support of his pretext showing. He has not, then, shown any genuine factual disputes concerning whether defendant's proffered reason for failing to return him to work is pretextual. Moreover, plaintiff directs the court to no race-based remarks made by any decisionmaker (or anyone else for that matter) in this case. In addition, it is undisputed that Dr. Knepper, at the time he determined that plaintiff could not return to work (and even at the time of his deposition in August 2007), did not know plaintiff and was unaware of plaintiff's race.[4] Thus, the evidence in this case taken as a whole–even when construed in the

---

[4]While plaintiff does not dispute this fact, he asserts that Dr. Knepper's testimony is "placed in doubt" because plaintiff correctly identified Dr. Knepper's race in his deposition.

15

light most favorable to plaintiff–is simply insufficient to permit a reasonable jury to conclude that defendant's failure to return plaintiff to work was based, even in part, on plaintiff's race. Summary judgment is granted in favor of defendant on this claim.

## V.    Section 301 Claim

Plaintiff's final claim, as asserted in the pretrial order, is that defendant breached certain terms of the collective bargaining agreement that, according to plaintiff, obligated defendant to return plaintiff to work under the ADAPT program.  Defendant moves for summary judgment on this claim on numerous grounds, including the undisputed fact that plaintiff did not exhaust the contractual remedies available to him in that he did not file a grievance alleging a violation of the agreement. Indeed, plaintiff does not dispute that he can bring suit under section 301 of the LMRA only if he "has exhausted the contractual remedies provided in the collective bargaining agreement[]." *Montgomery v. City of Ardmore*, 365 F.3d 926, 941 (10th Cir. 2004) (quoting *Aguinaga v. United Food & Comm'l Workers Int'l Union*, 993 F.2d 1463, 1471 (10th Cir. 1993)).  Plaintiff further does not dispute that contractual remedies were available to him

---

The fact that plaintiff either correctly guessed or was otherwise informed of Dr. Knepper's race (his deposition testimony is unclear on this point) does not tend to establish that Dr. Knepper, in fact, knew plaintiff's race and it does not undermine Dr. Knepper's undisputed testimony.   Plaintiff also vaguely suggests that the fact that Dr. Knepper was unaware of plaintiff's race is irrelevant because Dr. Knepper was merely an "agent working under someone else's authority."  But plaintiff directs the court to no evidence that anyone other than Dr. Knepper made the decisions at issue in this case and, in any event, plaintiff has no evidence that anyone to whom Dr. Knepper may have reported acted with the requisite discriminatory intent.

16

in the collective bargaining agreement in this case through the agreement's grievance and arbitration provisions and that he failed to file a grievance concerning defendant's purported breach of the ADAPT provisions.

Plaintiff contends that he is excused from filing a grievance (and, more specifically, from the exhaustion requirement) because the union breached its duty of fair representation by failing to file a grievance on plaintiff's behalf.  To be sure, proof that the union breached its duty of fair representation in its response to an employer's contract breach is an exception to the requirement of exhaustion.  *Id.* (quoting *Aguinaga*, 993 F.2d at 1471).  In such circumstances, the union has "effectively ceased to function as the employee's representative." *Aguinaga*, 993 F.2d at 1471. To establish the exception to the exhaustion requirement, then, plaintiff must come forward with evidence of "some conduct by [his] union that breached the duty of fair representation." *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998).  A union breaches its duty when its conduct is arbitrary, discriminatory or in bad faith, as, for example, when it arbitrarily ignores a meritorious grievance.  *Id.* (citations and quotations omitted).

The entirety of plaintiff's evidence concerning the union's alleged breach of its duty derives from less than two pages of plaintiff's deposition.  When asked whether he had ever filed a grievance alleging a violation of the collective bargaining agreement, plaintiff testified that he "gave it [his] best shot" and that he "talked to the president of the union, shop chairman and zone committee" and "they gave [him] a lot of good information" but that "they didn't take it off the ground." Nothing in plaintiff's testimony could permit an inference that the union's conduct was arbitrary, discriminatory or in bad faith.  To the contrary, plaintiff testified that he received

"good information" from the union.  Moreover, there is no evidence that plaintiff, as an individual employee, could not initiate the grievance procedure without union participation and there is no evidence that plaintiff ever asked the union to file a grievance on his behalf.  Plaintiff, then, has not established the exception to the exhaustion requirement.  *See Montgomery*, 365 F.3d at 932-33, 941 (evidence did not support assertion that union breached its duty of fair representation such that plaintiff should be excused from grievance-filing requirement where plaintiff left a telephone message for union president and union president never returned the phone call); *see also  Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir. 1987) ("[I]f a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him.").  Defendant's motion, then, is granted on this claim.  *See Montgomery*, 365 F.3d at 941-42 (district court properly granted summary judgment on section 301 claim where plaintiff failed to file grievance and did not establish exception to the exhaustion requirement).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 36) is granted and defendant's unopposed motion to continue the trial setting (doc. 49) is moot.

**IT IS SO ORDERED.**

Dated this 7th  day of January, 2008, at Kansas City, Kansas.

18

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge